## Warren Springer v. J. F. Schwitters.

### Gen. No. 13,337.

VARIANCE—*when objection of, comes too late.* An objection of variance comes too late if first raised on appeal.

NOTE: The decision in this case otherwise is controlled by the decision in Springer v. Siltz, 133 Ill. App. 552.

Action in case for fraud and deceit. Appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Affirmed. Opinion filed November 8, 1907.

STEDMAN & SOELKE and WILLIAM J. AMMEN, for appellant.

FRANK P. SADLER and ELSWORTH T. MARTIN, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an action against appellant and one Charles Z. Miller for alleged fraud and deceit. The suit was subsequently dismissed as to Miller, and at the trial a jury returned a verdict assessing damages in favor of appellee. From the judgment upon the verdict this appeal is prosecuted.

The declaration contains a statement of material facts substantially the same as those found in the statement preceding the opinion in Leonard v. Springer, 197 Ill. 532. The notes which it is alleged were given to appellee in payment of the purchase price for 800 acres of land in Colorado were two of the series issued as described in that case. In view of the holding therein, there can be no doubt that the declaration in the case at bar states a good cause of action. Like the declaration in Springer v. Siltz, 133 Ill. App. 552, this declaration contains an averment, not only that appellee relied upon the truth of the statement in the deed from

Springer to Miller and in the trust deed from Miller to the Chicago Title & Trust Company, but also upon statements and representations made to appellee by Springer and by a third party at Springer's instance, and that so relying, appellee in the case at bar executed a deed for 800 acres of land in Colorado conveying the same to Springer, receiving therefor two of the series of $1,000 notes before referred to.

In behalf of appellant a number of witnesses testified that in their opinion the leasehold interest upon which the series of notes in question purport to have been secured was worth at that time as much or more than the $100,000 stated as the consideration for the transfer of that leasehold from appellee to Maginnis and from the latter to Miller, maker of the notes in controversy. The jury evidently did not believe this testimony, and they were, we think, fully justified in disregarding it. That the notes taken by appellee have not been paid and that the security is in fact worthless is not denied. If the leasehold was then worth the sum of $100,000, it is difficult to believe that appellant would have conveyed it to Miller, taking in return nothing but notes executed by the latter, himself irresponsible, for $75,000, which notes appellant seems, according to his own showing, to have been willing to trade off for what are sometimes called "cats and dogs"—that is, anything he could get, having a possible value—without investigating the value. For these notes he was eager to accept at once a deed of land executed by a married man whom, according to appellee's testimony, he induced to describe himself in the deed as a bachelor, stating that in this method of execution the signature of the grantor's wife would be unnecessary. While appellant denies this, the jury seems not to have believed him. However this may be, we think it entirely clear from evidence not controverted that, as said in Leonard v. Springer, *supra*, on pp. 537-8, in reference to the deeds conveying the leashold to Maginnis and Miller,

"the statements of value in said deeds as alleged in the declaration having been made in pursuance of a scheme on the part of defendant, constituted fraud and deceit"; and that (p. 589) "the scheme was an artful one, calculated to lead an innocent third party to believe that the property was ample security for a much larger sum of money than that invested by the plaintiff."

It is said the verdict should have been set aside and the judgment should be reversed on account of alleged improper conduct of appellee's attorney. We have examined the portions of the record referred to, but discover nothing which can properly be deemed ground for reversal. It is said that as the declaration alleges appellee's land to have been worth $2,000 and no proof of its value was offered, there is a fatal variance between the allegations and proof. It is sufficient to say that the objection was not raised on the trial, when the proof might have been offered or the declaration amended, and the objection must be deemed to have been waived. See Wabash Ry. Co. v. Billings, 212 Ill. 37-40.

The damages allowed included the principal sum of the notes appellee received from appellant and interest at the rate stipulated in the notes. Appellee was entitled to the benefit of his bargain, to the real value which he was led by appellant's misconduct to suppose he was getting in the notes given him when the deal was consummated. Appellant's counsel cites Smith v. Bolles, 132 U. S. 125-129, as to the measure of damages. In that case it is said: "If the jury believed from the evidence that the defendant was guilty of the fraudulent and false representations alleged and that the purchase of stock had been made in reliance thereon, then the defendant was liable to respond in such damages as naturally and proximately resulted from the fraud. He was bound to make good the loss sustained, such as the moneys the plaintiff had paid and interest

and any other outlay legitimately attributable to defendant's fraudulent conduct. * * * The reasonable market value, if the property had been as represented, afforded therefore no proper element of recovery.'' In the case at bar the judgment requires appellant to ''make good the loss sustained'' and nothing more.

Finding no material error in the record, the judgment of the Superior Court will be affirmed.

*Affirmed.*