## National Bank of Pawnee, Appellee, v. John L. Hamilton, Appellant.

1.   EVIDENCE, § 260*—*when books of third person are inadmissible to show falsity of statements of defendant as to earnings of corporation.* In an action for fraud and deceit based on alleged fraudulent statements of the defendant as to the earnings of a corporation not a party to the action, *held* that the books of the corporation are not admissible in evidence to show that such statements were false.

2.   APPEAL AND ERROR, § 1469*—*when admission of improper evidence is harmless error.* The admission in evidence of certain book entries *held* harmless error, if error at all, where the party complaining testified to the same facts as were shown in the entries.

3.   FRAUD, § 60*—*when good faith is no defense to action for.* Good faith is no defense in an action for fraud and deceit where the fraud and deceit practiced consist of making false statements of fact as of the knowledge of the one speaking, for if one asserts a thing to be true as of his own knowledge when it is not true, or when he does not in fact know whether it is true or not, his statement that he knows it to be true of his own knowledge is false whether the fact established is true or not.

4.   FRAUD, § 93*—*when evidence as to belief, understanding or good faith is inadmissible.* In an action for fraud and deceit based on false statements of fact made as of the knowledge of the defendant, it is incompetent for him to prove what he believed, meant, intended or understood, in connection with the falsehood stated, or to prove his good faith in the matter.

5.   FRAUD, § 20*—*what does not constitute an expression of opinion.* In an action for fraud and deceit based on alleged false statements of defendant, *held* that the statements as to the paid-up capital stock of a corporation and as to its profit for a certain year were, as a matter of law, statements of fact and not expressions of opinion.

6.   FRAUD, § 127*—*when alleged false statements are for jury and when for court.* If alleged false statements are of such a nature as to admit of being construed either as statements of fact or as an expression of opinion, the question whether they are statements of fact or expressions of opinion is for the jury, but where such statements are positive written statements of fact, the meaning of which cannot be misunderstood, and are known to be false, the question is one of law for the courts.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

National Bank of Pawnee v. Hamilton, 202 Ill. App. 516.

7. FRAUD, § 115*—*when evidence is sufficient to show falsity of statements as to amount of paid-up capital stock of corporation and as to earnings.* In an action for fraud and deceit based on the defendant's alleged false statements as to the amount of paid-up capital stock of a corporation and as to its earnings for a certain year, evidence *held* to show that such statements were false.

Appeal from the Circuit Court of Vermilion county; the Hon. Augustus A. Partlow, Judge, presiding. Heard in this court at the April term, 1916. Affirmed. Opinion filed October 13, 1916. Rehearing denied December 2, 1916. *Certiorari* denied by Supreme Court (making opinion final).

Walter T. Gunn and Jay Briggs, for appellant.

O. M. Jones and Acton & Acton, for appellee.

Mr. Justice Graves delivered the opinion of the court.

This is an action in trespass on the case brought by appellee against appellant based on claimed false representations made in a letter from appellant to appellee relative to the financial standing and ability of the Hoopeston Malleable Iron Works of Hoopeston, Illinois, for the purpose of inducing appellee to make a loan of $7,500 to said iron works, which false and fraudulent representations it is alleged appellee believed and relied upon and on the strength of which it made the loan, and also based on the claim that by later false and fraudulent representations, known by appellant to be untrue but believed and relied on by appellee, it was induced to accept a renewal of the note given for the loan with even less security than the one given for the original loan. The loan was never collected and the evidence tends to show it is and was all the time uncollectible.

The declaration contains three counts: Two of them charge fraud and deceit and the other charges that appellant, as the agent of appellee, assumed to give it

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

information as the basis of making a loan, and carelessly and negligently performed its duty by giving false information on which appellee relied, and was damaged in consequence of so doing. The jury found appellant guilty and assessed appellee's damages at $9,475.90. Judgment was entered on the verdict with interest.

It is undisputed that appellee received an application for a loan of from $2,500 to $5,000 to the Hoopeston Horse Nail Company and that it wrote a letter to appellant, who was a banker at Hoopeston, asking for information as to the financial responsibility of that company; that appellant replied in the following language:

"Hoopeston, Illinois,
Dec. 5, 1908.

"Mr. George W. Lemmon,
Pawnee, Illinois.

"Dear Cousin:—

"Your letter of November 28th received during my absence in Washington. I just returned from there last evening.

"I note what you say concerning the Hoopeston Horsenail paper. In reply will state that this is the strongest and best paper put out in Hoopeston and has nearly all the men of means back of it. I have been unable as yet to see the manager of the company since my return and probably will not get to see him until the first of the week. I had a talk, however, with the manager of the Hoopeston Malleable Iron Works. This is a factory that started up here a little over a year ago. They could use $7,500.00 for four months at six per cent. interest. This company has a paid up capital stock of $75,000.00. Are employing from ninety to one hundred men and their business shows a profit for the last year of over $20,000.00

"This paper would be endorsed by S. D. Porter, who is worth $125,000.00, and Mr. F. A. Smith, who is estimated to be worth from ten to fifteen thousand dol-

lars. This paper, I consider all right. If you can use it wire me on receipt of this and I will have them sign a note and I will send the same to you for discount. They do not like the idea of a demand loan. * * *"

The evidence fairly tends to show that relying on this letter and believing the statements therein to be true, appellee authorized appellant to make the loan to the Hoopeston Malleable Iron Works, and that a draft payable to that company for $7,500 less the discount was sent to appellant or his bank by appellee; that this draft was indorsed on the back by appellant and the proceeds credited to the account of the Hoopeston Malleable Iron Works and that, on the same day and apparently as a part of the same transaction, appellant paid out of the funds the Malleable Iron Company two notes held by appellant's bank against that company aggregating with interest $5,730.18; that the statements in the letter that the Hoopeston Malleable Iron Works had a paid-up capital stock of $75,000; that it employed ninety or one hundred men; that its business showed a profit for the previous year of over $20,000 and that S. D. Porter was worth $125,000, were each and all false and untrue to the knowledge of appellant. That the note was not paid when due but was renewed through the agency of appellant a few times and that later the cashier and vice president of appellee called on appellant and was taken out to the plant by appellant and valuable lands and buildings were shown to the officers of appellee by appellant as the property of the Hoopeston Malleable Iron Works, and that appellant told the said officers of appellee that the note was good even without the signature of Smith, and would be paid if renewed again, and that thereupon it was again renewed.

A careful study of the evidence in this record fails to support the contention that the verdict is not supported by the weight of the evidence.

It is contended that the court erred in admitting cer-

tain books of the Hoopeston Malleable Iron Works, which was not a party to the suit, to show that that company had lost upwards of $10,000 · instead of making a profit of more than $20,000, during the year previous to the writing of the letter in question. The point is well taken. The entries in the books of a stranger to the litigation cannot be held to be binding on a litigant who has never had anything to do with them. or the matters concerning which the entries are made. As to such entries the rule *res inter alios acta, alios nec prodest nec nocet* applies. *Leiserowitz v. Fogarty,* 135 Ill. App. 609. The error in the admission of this evidence was however harmless because the facts sought to be established by the books were shown by other competent evidence which is not contradicted.

Appellant next argues that it was error to admit the entries in the bank books of the firm of Hamilton & Cunningham, Bankers, of which firm appellant was a member, for the same reason urged against the admission of the books of the Malleable Iron Works. These entries were offered for the purpose of showing that a large part of the funds loaned by appellee to the Malleable Iron Works went immediately to appellant's bank to pay a note which that bank held against that company, as tending to show that appellant had a personal interest in having the loan in question made. No objection to this evidence was interposed at the trial. Mr. Gunn did say: "Now that is not admissible unless they promise to follow it up and show the balance of the transaction." The attorney for appellee replied "We do," and that closed the incident. There was no ruling by the court and no complaint is made that the whole transaction was not later shown. Even if the admission of these entries should be held to be error, it would be harmless, for appellant himself, while on the stand in his own behalf, testified to the same facts shown by these entries.

It is next urged by appellant that he was unduly re-

stricted in introducing evidence of his good faith in the transaction. Good faith is no defense where the fraud and deceit practiced consist of making false statements of fact as of the knowledge of the one speaking, for if one asserts a thing to be true of his own knowledge when it is not true, or when he does not in fact know whether it is true or not, his statement that he knows it to be true of his own knowledge is false whether the fact asserted is true or not. And if a person makes a positive statement that a thing that is susceptible of knowledge is true, it is implied that he knows it to be true of his own knowledge, and, if he has no such knowledge, he is guilty of actual fraud. *Borders v. Kattleman,* 142 Ill. 96; *Coolidge v. Rhodes,* 199 Ill. 24. Under such a state of facts, it is incompetent for one charged with fraud to prove what he believed, meant, intended or understood, in connection with the falsehood stated. *Flower v. Brumbach,* 131 Ill. 646; *Sutter v. Rose,* 169 Ill. 66.

The letter of appellant already quoted is not a mere statement of an opinion or belief but contains at least two false statements of fact as of the knowledge of appellant: First, that the Malleable Iron Works had $75,000 paid-up capital stock; second, that its business the previous year showed a profit of more than $20,000. There is a third statement of fact that is apparently untrue, and that is that one of the proposed indorsers, S. D. Porter, was worth $125,000.

In *Coolidge v. Rhodes,* 199 Ill. 24, it was held that representations that the capital stock of a corporation is fully paid and that the stock was paying a dividend was a representation of a material fact.

In *Booth v. Smith,* 117 Ill. 370, it was held that a representation that a company was successfully operating its mine and paying current expenses and that there has been invested in the plant $3,500 was a statement of fact.

In *O'Donnell & Duer Bavarian Brewing Co. v. Farrar,* 163 Ill. 471, it was held that a representation that a saloon was taking in $20 per day and was doing a profitable business was a statement of fact and not an opinion.

In making the statements complained of in this case, appellant was volunteering information concerning the financial responsibility of the Hoopeston Malleable Iron Works, for the manifest purpose of inducing appellee to loan that company $7,500. The language employed was positive and unequivocal. He said: ''This company has a paid-up capital stock of $75,000 * * * their business shows a profit for the last year of over $20,000. This paper would be endorsed by S. D. Porter, who is worth $125,000.'' In contrast with these positive statements of fact, he speaks in qualified terms of other matters. He says: ''Mr. F. A. Smith, * * * is estimated to be worth,'' etc. ''This paper, I *consider* all right.'' These qualified expressions of opinion emphasize the positive character of the other statements referred to. There was no error committed by the court in refusing to admit evidence of appellant's good faith in making these false statements.

It is lastly urged that the court erred in giving and refusing instructions. The basis of this claim is mainly that the court was wrong in construing the statements contained in the letter, already referred to, to be statements of facts instead of opinion. What we have already said on that subject is sufficient.

Some of appellant's refused instructions were framed on the theory that it was for the jury to say whether the false statements contained in the letter in question were statements of fact or mere opinion. If the statement had been of such a nature as to admit of being construed either as a statement of fact or the expression of an opinion, then, whether it was a statement of fact or of opinion would be a question of fact

for a jury, but where, as in this case, the statements are positive written statements of fact, the meaning of which cannot be misunderstood and are shown to be false, it becomes a question of law for the court. These instructions were also properly refused.

Finding no reversible error in the record, the judgment of the Circuit Court is affirmed.

*Affirmed.*